UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CATHERINE P. MACK, | ) | Civil Action No.: 4:13-cv-2887-BHH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| HOUSE OF HOPE OF THE PEE DEE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**I.     INTRODUCTION**

In this employment action, Plaintiff alleges claims for discrimination, retaliation and a hostile work environment in violation Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq., and failure to accommodate, retaliation and a hostile work environment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.  She also alleges state law causes of action for intentional infliction of emotional distress, negligent retention and supervision,http://web2.westlaw.com/Welcome/Westlaw/default.wl?rs=WLW14.10&pbc=FFED7BA6&vr=2.0&fn=_top&mt=Westlaw&sv=Split and wrongful termination.  Presently before the court is Defendant's Motion for Summary Judgment (Document # 22).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  This report and recommendation is entered for review by the district judge.

**II.     FACTS**

Defendant House of Hope of the Pee Dee (House of Hope) is a faith-based charity that helps homeless persons in the Pee Dee region of South Carolina. Pl. Dep. 23 (Ex. to Def. Motion).  House

of operates a men's shelter, women's shelter, and thrift store called the Mission Mart. Pl. Dep. 23. Profits from the Mission Mart assist with House of Hope's operating expenses. Pl. Dep. 23. In October 2009, House of Hope hired Plaintiff as a clothes sorter for its Mission Mart. Pl. Dep. 29. Plaintiff testified she was hired by Executive Director Jane Tuttle who acted upon the recommendation of the Mission Mart manager Lisa James. Pl. Dep. 25. Plaintiff's job duties included sorting donated clothes, placing price tags on them, and moving them to the sales floor. Pl. Dep. 29. Plaintiff signed an acknowledgment that her employment was at-will and understood the meaning of at-will employment. Pl. Dep. 26-28.

On December 22, 2011, Plaintiff fell backwards and hit her head on a clothes rack while working. Pl. Dep. 50-51. The next day she visited a local emergency room where she received x-rays and an injection. Pl. Dep. 50-51. She hired an attorney to assist with her workers' compensation claim. The Executive Director, Jane Tuttle, called Plaintiff and complained about her retaining an attorney. Pl. Dep. 39-42. She then began seeing Dr. Irvin with Pee Dee Orthopedic Associates, P.A. Pl. Dep. 50-51. On February 6, 2012, Dr. Irvin released Plaintiff to work with lifting restrictions and instructions to return for an appointment in three weeks. Pl. Dep. 51; Pee Dee Ortho. Work Note dated Feb. 6, 2012 (Ex. A to Def. Motion). On February 28, 2012, Dr. Irvin continued the lifting restrictions with instructions to return for an appointment in four weeks. Pl. Dep. 52; Pee Dee Ortho. Work Note dated Feb. 28, 2012 (Ex. B to Def. Motion).

In March of 2012, Plaintiff injured her foot during physical therapy. Pl. Dep. 53. On March 8, 2012, a physician's assistant at Pee Dee Orthopedic continued her at work no heavy lifting, pushing or pulling, and no standing or prolonged walking over thirty minutes. Pee Dee Ortho. Work Note dated March 8, 2012 (Ex. C to Def. Motion). Mission Mart manager, Lisa James, allowed

Plaintiff to perform seated work. Pl. Dep. 52-53. On April 23, 2012, the physician's assistant removed Plaintiff's work restrictions except the continued use of a walking boot. P. Dep. 53-54; Pee Dee Ortho. Work Note dated Apr. 23, 2012 (Ex. D. to Def. Motion).

Although her walking and standing restrictions had been lifted, Plaintiff asked James if she could continue performing seated work. Pl. Dep. 53-54. The seated work was located in a back room out-of-sight. Pl. Dep. 30; James Decl. ¶ 3. James denied Plaintiff's request to perform seated work because Plaintiff's most recent medical note did not recommend any work limitations. James Decl. ¶ 4; Pee Dee Ortho. Work Note dated Apr. 23, 2012. The same day that Plaintiff made this request to perform seated work, she was asked to take a drug test. SHAC Questionnaire (Ex. 1 to Pl. Response). Plaintiff worked six days without the restrictions until May 3, 2012, when she presented a new medical note limiting walking and/or standing to no more than 45 minutes at one time for two weeks. Pl. Dep. 54-55; Pee Dee Ortho. Work Note dated May 2, 2012 (Ex. E to Def. Motion). Upon presentation of this new note, James allowed her to resume the seated work. Pl. Dep. 55. Plaintiff acknowledges her foot injury was of short duration, James honored all medical restrictions, and the only time James denied her request was for six days during which she did not have a medical note with the restrictions. Pl. Dep. 56, 68.

According to James, on May 17, 2012, while Plaintiff was performing seated work in an area that was not readily visible, James approached Plaintiff's work area and, upon her approach, Plaintiff began working. James Decl. ¶ 7. It was clear to James that Plaintiff had not been working. James Decl. ¶ 7. James instructed Plaintiff to do her work. James Decl. ¶ 7. Shortly thereafter, James soon returned to Plaintiff's work area and found Plaintiff talking with a volunteer instead of working. James Decl. ¶ 7. James again instructed Plaintiff to do her work and not interfere with others' work.

James Decl. ¶ 7. In a short period of time, James returned to Plaintiff's work area and, for the third time, found Plaintiff not working and talking to two volunteers. James Decl. ¶ 7. James decided to terminate Plaintiff for insubordination because Plaintiff, despite two prior warnings on the same day, was not working and interfered with others performing their work. James Decl. ¶ 7. Plaintiff testified that James told her Tuttle made the decision to terminate her because she was undependable, unproductive and because she was gossiping. Pl. Dep. 59. She testified that she could not believe someone would make up those lies about her. Pl. Dep. 58.

Plaintiff testified that she believed the true reason for her termination was retaliation for hiring an attorney to assist with her workers' compensation claim. Pl. Dep. 30-31. On August 3, 2012, the South Carolina Department of Employment and Workforce (SCDEW) appeal tribunal found that Plaintiff was not terminated for cause as defined by S.C. Code Ann. § 41-35-120 and, thus, no disqualification of unemployment benefits would be imposed. SCDEW Decision (Ex. 3 to Pl. Response).

### III. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita

Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### IV.     DISCUSSION

#### A.     Title VII

##### 1.     Discrimination

In her Complaint, Plaintiff alleges that Defendant discriminated against her because of her race. Title VII makes it "an unlawful employment practice for an employer-(1) to fail or refuse to

hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1). When direct evidence of race discrimination is lacking, a plaintiff may proceed under the burden-shifting proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this burden-shifting scheme, Plaintiff has the initial burden of establishing a prima facie case of discrimination. Id. To establish a prima facie case of race discrimination in a termination case, the plaintiff must present facts showing that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) similarly-situated employees outside the protected class received more favorable treatment. White v. BFI Waste Services, LLC, 375 F.3d 288, 295 (4th Cir.2004). The fourth element can also be met by showing other circumstances giving rise to a reasonable inference of unlawful discrimination. Miles v. Dell, Inc., 429 F.3d 480, 486–87 (4th Cir.2005).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This is merely a burden of production, not of persuasion. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Postal

Service Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. Reeves, 530 U.S. at 143. Throughout the burden shifting scheme set forth in McDonnell Douglas, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against her.

Defendant does not dispute that Plaintiff meets a prima facie case of race discrimination. As its legitimate, non-discriminatory reason for her termination, Defendant states that she was terminated after being told on two different occasions to return to work and she failed to do so. Thus, the burden returns to Plaintiff to demonstrate by a preponderance of the evidence that the reason given for her termination was pretext for a discriminatory reason.

Plaintiff states in her deposition that the reasons she was given for her termination–that she was undependable, unproductive and was gossiping–were lies. Pl. Dep. 58-59. However,

> simply because [the employee] presents evidence that the defendant['s] justification for [its] adverse employment decision may be false does not mean that [the employee's] evidence demonstrates pretext ... "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason ... is correct ... It is not enough to disbelieve the [employer]."

Love–Lane v. Martin, 355 F.3d 766, 788 (4th Cir.2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146–47, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)) (internal citations omitted). A plaintiff must demonstrate that a reasonable jury could "believe [her] explanation of

intentional ... discrimination." Id.  Here, Plaintiff specifically testifies in her deposition that she does not believe she was discharged because of her race.  Pl. Dep. 32.  Based upon the record presented, Plaintiff fails to present sufficient evidence of pretext.  Thus, summary judgment is appropriate on Plaintiff's race discrimination claim.

### 2.     Retaliation

Plaintiff also alleges in her complaint that Defendant retaliated against her for engaging in protected activity.  Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show (1) she engaged in protected activity, (2) the employer took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985); Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir.1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998).

To constitute protected activity, a plaintiff must have conveyed to the employer a reasonable belief that the actions complained of violated Title VII. See Jordan v. Alternative Res. Corp., 458 F.3d 332, 340–41 (4th Cir.2006).  There is no evidence in the record that Plaintiff made any complaints of race discrimination or otherwise engaged in protected activity under Title VII.  Thus, Plaintiff's Title VII retaliation claim fails and summary judgment is appropriate.

### 3.     Hostile Work Environment

Plaintiff also alleges that she suffered a racially hostile work environment. To establish a hostile work environment, a plaintiff must show that: (1) she experienced unwelcome harassment; (2) the harassment was based on her protected class; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir.2005); White v. BFI Waste Servs., LLC, 375 F.3d 288, 297 (4th Cir.2004); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). Plaintiff claims that she suffered unwelcome harassment by Tuttle and a coworker. Pl. Dep. 40-44, 48. However, she presents no evidence that this treatment was based upon her race.

Further, she fails to show that this conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere. Title VII is not a "general civility code." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir.2008). The Fourth Circuit has established a four factor approach to evaluate the totality of the circumstances in determining whether conduct is severe or pervasive: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with plaintiff's work performance. Connor v. Schrader Bridgeport Int'l, Inc., 227 F.3d 179, 193 (4th Cir.2000). The Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." Sunbelt Rentals, Inc., 521 F.3d at 315.

In her deposition, Plaintiff presents a handful of discrete incidents that she alleges constituted harassment. She claims that Tuttle called her and tried to intimidate her when Plaintiff hired a worker's compensation attorney. Pl. Dep. 39-41. Tuttle told Plaintiff that it was rude of her to hire an attorney and that it will only tie things up. Pl. Dep. 40. Tuttle also made a comment in a meeting–"either you're with us or against us"–that Plaintiff believed was directed at her. Pl. Dep. 41. Plaintiff also claims Tuttle asked other employees to spy on her. Pl. Dep. 42-43. Plaintiff also testifies that a coworker, Yvette Elvington, reported to James and Tuttle that Plaintiff was unproductive, which Plaintiff asserts was untrue. Pl. Dep. 37, 48. Plaintiff testifies that Elvington made such reports approximately five times. It is not clear from the record how and when Plaintiff was made aware of Elvington's reports. The conduct about which Plaintiff complains is neither physically threatening nor humiliating nor is there evidence that it unreasonably interfered with Plaintiff's work performance. In addition, with respect to Elvington's reports about Plaintiff's productivity, there is no evidence that these comments were made to Plaintiff or when they were relayed to her. Plaintiff simply fails to show that the unwelcome conduct was sufficiently severe or pervasive to create an abusive atmosphere or that it was based upon her race, summary judgment is appropriate. See, e.g., Signal v. Gonzales, 430 F.Supp.2d 528, 539 (D.S.C.2006) (finding that conduct that is "annoying, bothersome, and stress-inducing" does not meet the severe or pervasive element).

**B.     ADA**

    **1.     Failure to Accommodate**

Plaintiff alleges that Defendant discriminated against her in violation of the ADA by failing accommodate her needs. The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The ADA places an affirmative obligation on employers to make reasonable accommodations for qualified individuals if such accommodation will enable the employee to successfully perform the job in question. 42 U.S.C. § 12111(8). Violations of the ADA occur when the employer fails to make reasonable accommodations for a qualified individual with a disability. Rhoads v. F.D.I.C., 257 F.3d 373, 387 n. 11 (4th Cir.2001). The McDonnell Douglas burden-shifting framework applies in ADA cases as well. Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.1995). "In a failure to accommodate case, a plaintiff establishes a prima facie case by showing '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations.'" Id. (citing Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir.1999)). Defendant argues that Plaintiff was not disabled within the meaning of the ADA and, even if she was, Defendant did not fail to accommodate her.

For purposes of the ADA, a person is disabled when he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] ... regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). Defendant argues that Plaintiff did not have a disability because any injury she sustained while working was temporary. In Summers v. Altarum Inst., Corp., 740 F.3d 325 (4th Cir. 2014) the Fourth Circuit held under the broad interpretations mandated by the ADA Amendments

Act of 2008 ("ADAAA") that a temporary impairment could substantially limit a major life activity only if it is "sufficiently severe":

> According to the appendix to the EEOC regulations, the "duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." Id. § 1630.2(j)(1)(ix)(app.). Although "[i]mpairments that last only for a short period of time are typically not covered," they may be covered "if sufficiently severe." Id. The EEOC appendix illustrates these principles: "[I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." Id.

Id. at 329.

There is no medical evidence in the record indicating the specific type of injuries Plaintiff sustained. However, Plaintiff states in her EEOC questionnaire that she suffered a neck sprain and an ankle injury. EEOC Questionnaire. Plaintiff argues that she was disabled because she suffered these injuries and was substantially limited in the major life activity of working. While the evidence in the record may indicate that Plaintiff was suffering from limitations, it does not support a finding that she was substantially limited in the major life activity of working. Pollard v. High's of Balt., Inc., 281 F.3d 462, 471 (4th Cir.2002) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 491–92, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)) ("[T]o be substantially limited in the major life activity of working, 'one must be precluded from more than one type of job, a specialized job, or a particular job of choice.'").

Nevertheless, assuming arguendo she is substantially limited in a major life activity, she fails to show that Defendant denied her a reasonable accommodation. Plaintiff first argues that Defendant failed to accommodate her by failing to assist her with her workers' compensation claim shortly after her injury. As stated above, a reasonable accommodation is one that allows an employee to perform

the essential functions of her position. Rhoads, 257 F.3d at 387. Although Plaintiff presents evidence of a delay in assisting her in obtaining medical care, she fails to show that Defendant did not make this accommodation. South Carolina Code Ann. § 42-15-60(A) provides that an employer "shall provide medical, surgical, hospital, and other treatment, including medical and surgical supplies as reasonably may be required" and "[i]f in an emergency, on account of the employer's failure to provide the medical care as specified in this section, a physician other than provided by the employer is called to treat the employee, the reasonable cost of the service must be paid by the employer, if ordered by the commission." Plaintiff claims that it took two weeks in January 2012 for Defendant to get Plaintiff seen by a worker's compensation doctor and that Michelle Poston, the person in charge of handling Plaintiff's claim, had not taken the time to handle the claim because she did not realize the seriousness of Plaintiff's injury. Pl. Dep. 38-39. Under the circumstances presented, this delay in treatment does not amount to a denial of an accommodation. See generally Hollestelle v. Metro. Wash. Airports Auth., No. 97–1465, 1998 WL 228199, at *3 n. 5 (4th Cir. May 8, 1998) (an employer is not obligated to provide the employee the accommodation of his choice) (collecting cases); Griffin v. Holder, 972 F.Supp.2d 827, 849 (D.S.C.2013) (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285–86 (11th Cir.1997)).[1]

      Plaintiff also alleges that Defendant failed to accommodate her on April 23, 2012, when she asked to continue in her seated position despite the fact that her walking and standing restrictions were removed. Defendant required Plaintiff to provide a doctor's note with such restrictions and allowed her to return to seated work once she produced the new doctor's note on May 3, 2012. To

---

[1] Cf. 29 C.F.R. § 1630.2(o) (noting that the use of paid or unpaid leave for necessary treatment is a reasonable accommodation).

identify the employee's precise limitations, the employer may make medical inquiries "into the ability of an employee to perform job-related functions." 42 USCS § 12112(d)(4)(B); 29 C.F.R. § 1630.14(c); see also Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346 - 347 (4th Cir. 2013)("The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer his disability and his desire for an accommodation for that disability."). Therefore, Defendant did not deny Plaintiff a reasonable accommodation by requesting medical documentation of the need for the accommodation. Further, it provided the accommodation once it received the documentation. Accordingly, Plaintiff fails to show she was denied a reasonable accommodation. Thus, summary judgment is appropriate as to her ADA failure to accommodate claims.

### 2.     Retaliation

As with Title VII, retaliation is prohibited under the ADA. The ADA prohibits an employer from retaliating against an employee for engaging in protected activity, that is, "oppos[ing] any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this chapter." 42 U.S.C. § 12203(a).   To establish a prima facie claim for retaliation under the ADA, a plaintiff must show: 1) that he engaged in a protected activity, 2) his employer acted adversely against him, and 3) the protected activity was "causally connected" to the employer's adverse action. Rhoads v. FDIC, 257 F.3d 373, 392 (4th Cir.2001).

In her deposition, Plaintiff addresses her claim for retaliation:

Q.     Why do you believe you were terminated?
A.     I believe I was terminated because of retaliation.
Q.     Any other reason?

> A.  No other reason.
> Q.  Retaliation for what?
> A.  For me getting an attorney involved in the incident.
> Q.  Do you believe you were terminated in retaliation for any other reason?
> A.  No.
> Q.  Just to be clear, you believe you were terminated in retaliation for retaining an attorney in relation to your worker's compensation claim. Is that right?
> A.  That's right.

Pl. Dep. 31-32; see also Pl. Dep. 61 (confirming her belief that she was terminated because she hired a worker's compensation attorney). She further testifies that she hired an attorney because she was in pain and was concerned for her health and Michelle Poston was not taking her need for medical attention seriously. Pl. Dep. 40.

The Fourth Circuit has found that requesting an accommodation amounts to engaging in protected activity. Haulbrook v. Michelin N. Amer., 252 F.3d 696, 706 (4th Cir.2001). As discussed above, Plaintiff sought assistance in obtaining medical care and engaged an attorney because Poston was not prompt in doing so. While Poston's actions may not amount to a denial of accommodation, under the circumstances presented here, Plaintiff presents sufficient evidence to show she engaged in protected activity.

Plaintiff suffered an adverse employment action when she was terminated. Next, she must show a causal connection between her protected activity and the adverse action. Here, viewing the evidence in the light most favorable Plaintiff, the record reveals that Tuttle, James, and other employees began treating her differently once she was hurt and hired an attorney until the time she was terminated. Tuttle called Plaintiff and told her it was rude of her to hire an attorney. Tuttle asked Plaintiff if she thought hiring an attorney would help her get what she wanted, that is, medical attention, and told Plaintiff that hiring an attorney would actually hinder the process. Pl. Dep. 40.

-15-

Tuttle also asked other employers to watch Plaintiff closely and report her activities. Pl. Dep. 36. James complained when Plaintiff had to go to therapy. Pl. Dep. 35. This evidence is sufficient to create an issue of fact with respect to a causal connection between Plaintiff's protected activity and her termination.

Therefore, the burden shifts to Defendant to produce a legitimate, non-retaliatory reason for her termination. As set forth above, Defendant states that Plaintiff was terminated after being told on two different occasions to return to work and she failed to do so, and Plaintiff argues that the reasons she was given for her termination–unproductive, unreliable, and gossiping–were untrue. While this alone is insufficient to create an issue of fact with respect to pretext, when coupled with evidence indicating a causal connection between her protected activity and her termination, an issue of fact exists as to whether the true reason for Plaintiff's termination was retaliation for her protected activity. Accordingly, summary judgment is not appropriate with respect to Plaintiff's ADA retaliation claim.

### 3. Hostile Work Environment

As with her race discrimination claim, Plaintiff also asserts that she suffered a hostile work environment as a result of her disability. For the same reasons discussed above, Plaintiff fails to present sufficient evidence to show that the unwelcome conduct was sufficiently severe or pervasive to create an abusive environment, and thus, her hostile work environment claim fails under the ADA as well.

### C. State Law Claims

Plaintiff also asserts state law claims for intentional infliction of emotional distress, negligent retention and supervision, and wrongful termination. However, her claims for intentional infliction

of emotional distress, negligent supervision, and negligent retention are barred by the exclusivity provision of the South Carolina Workers' Compensation Act. S.C. Code. Ann. § 42-1-540.[2]  In addition, her wrongful termination claim fails as well as because both the South Carolina Workers' Compensation Act and the ADA provide anti-retaliation rights and remedies, which precludes a wrongful termination claim.  S.C. Code § 41-1-80; 42 U.S. Code § 12203; Dockins v. Ingles Markets, Inc., 413 S.E.2d 18 (S.C. 1992) ("When a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy. We hold this applies when the right is created by federal law as well as state law.").  Furthermore, Plaintiff does not address her state law claims in her response to Defendant's motion, and thus, must have abandoned those claims.  For these reasons, summary judgment is appropriate as to Plaintiff's state law claims for intentional infliction of emotional stress, negligent retention and supervision and wrongful termination.

---

[2]Smalls v. Imperial Servs. Group, 2011 U.S. Dist. LEXIS 140302 at * 7 – 10 (D.S.C. Nov. 8, 2011); Loges v. Mack Trucks, Inc., 308 S.C. 134, 417 S.E.2d 538 (S.C.1992) ("[A]llegations of intentional infliction of emotional distress, assault and battery as these constitute personal injuries within the scope of the Act."); Sabb v. South Carolina State University, 567 S.E.2d 231, 234 (S.C. 2002) (negligent supervision); Palmer v. House of Blues Myrtle Beach Rest. Corp., 2006 U.S. Dist. LEXIS 67593, 2006 WL 2708278 (D.S.C. September 20, 2006)(dismissing negligent supervision cause of action because barred by the exclusivity provision of the South Carolina Workers' Compensation Act); Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700 (S.C. 1993) (stating that the Act provides exclusive remedy for employees who sustain work-related injury; claim of negligence for failure to exercise reasonable care in selection, retention, and supervision of co-employee is covered by the Act); Washington v. Hilton Hotels Corp., 2008 WL 747792, at * 4 (D.S.C. Mar.17, 2008); Edens v. Bellini, 359 S.C. 433, 597 S.E.2d 863 (S.C. App. 2004) (barring negligence cause of action against employer by estate of employee dismissed because barred by the exclusivity provision of the South Carolina Workers' Compensation Act).

## V.   CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 22) be denied as to Plaintiff's retaliation claim under the ADA and granted in all other respects.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

January 13, 2015
Florence, South Carolina